M. B. EVERSON v. W. W. SINCLAIR, Sheriff, Appellant.

Estoppel to Deny Title: INSUFFICIENT EVIDENCE. An officer attached goods as the property of a third party, in an action for the price of merchandise, but plaintiff claimed the goods to be his. Just previous to the sale of the merchandise such third party was in business at another place, from which he had withdrawn. Plaintiff, who had been his clerk, continued business in the store without any ostensible change of ownership, and in the name of his vendor. The officer knew before attaching that the stock did not belong to such third party, and he did not show that credit was given to him for the merchandise because of his supposed ownership of plaintiff's stock. *Held,* that plaintiff was not estopped from asserting his title as against the officer.

*Appeal from Hamilton District Court.—*HON. S. M. WEAVER, Judge.

SATURDAY, DECEMBER 16, 1899.

ACTION at law to recover the value of specific personal property alleged to have been wrongfully taken by the defendant under a writ of attachment issued against the property of J. J. McGrath. There was a trial by the court without a jury, and a judgment for plaintiff for the amount of his claim. The defendant appeals.—*Affirmed.*

*George Wambach* for appellant.

*Wesley Martin* for appellee.

ROBINSON, C. J.—On the thirty-first day of July, 1896, Strohmeyer Bros. commenced in the district court of Story county an action against J. J. McGrath, aided by attachment. A writ of attachment was delivered to the defendant, as sheriff of Hamilton county, for service, which he served on the date mentioned by levying upon and taking into his possession five bicycles, which were subsequently sold by him under a special execution issued in the case specified. The plaintiff claims, and the district court was authorized to find, that when the writ was issued and levied the bicycles taken thereunder were owned by the plaintiff. The defendant pleads and insists that the plaintiff is estopped to assert title against him by reason of facts substantially as follows: The action of Strohmeyer Bros. was to recover an amount due for merchandise sent by the firm to McGrath on the 11th day of April, 1896. At that time he was engaged in the mercantile business at Nevada, and the merchandise sold was delivered there; but he had previously been in business in Webster City, and the plaintiff had been employed by him there as clerk. McGrath had carried on a hardware business in Webster City, but disposed of his stock of hardware in the latter part of March, 1896. As we understand the testimony of the plaintiff, he continued business in the place McGrath had occupied, without ostensible change of management or ownership. McGrath had given his permission to use his name in busi-

ness transactions to the amount of eight hundred dollars, and the plaintiff carried on business in his name, ordering goods, advertising, and depositing money in the bank, and transacting business generally in the name of McGrath. The bicycles in suit were ordered in his name, and there was nothing to apprise the public that the business really belonged to the plaintiff. On the twenty-seventh day of July he learned that McGrath had given a mortgage on his stock in Nevada, and, acting on the advice of a traveling salesman, made an inventory of the goods in stock, and claims that he then took possession of the stock in his own name. He testifies that he made known his ownership to the defendant before the levy under the writ of attachment was made. We must assume, for the purpose of this appeal, that the testimony of the plaintiff is true. The testimony on the part of the defendant establishes without contradiction the following facts: The order for the merchandise sold by Strohmeyer Bros. to McGrath was received in March, 1896, and before it was filed the firm made inquiries in regard to the standing of McGrath, consulting his rating as given by a commercial agency. The firm knew that the business in Webster City had been carried on in his name, and had no knowledge of the arrangement between him and the plaintiff (if it had then been made) by which the latter was the real owner of the business. The only change of which the firm had knowledge at about the time the goods were ordered was the removal of the hardware portion of the stock. In making the sale to McGrath, Strohmeyer Bros. relied upon the commercial report of McGrath's standing financially, and upon his apparent ownership of the Webster City stock and business. The plaintiff continued after as he had before the change, apparently in the same capacity. A member of the firm testifies that, before the action against McGrath was commenced, he sent an employe of his firm, named Miller, to the plaintiff, to ascertain if the mortgage McGrath had given included the Webster City stock, and

that Miller returned and reported that the plaintiff stated that it did not, but that the stock belonged to McGrath. Miller testifies that on the thirtieth day of July he talked to the plaintiff in regard to the ownership of the Webster City stock, and was told by him that it belonged to McGrath, and that "on the strength of that we levied on the property." The plaintiff admits having had a conversation with Miller at the time specified, but says he does not remember making the statement claimed by Miller, and thinks he would have remembered it, had it been made. Miller admits that he did not inform the plaintiff of the purpose of the inquiry, nor that he was interested in the ownership of the stock.

We are of the opinion that the district court was authorized to find that the plaintiff was not estopped, by what he did or omitted to do at the time the writ of attachment was issued and levied, from asserting his ownership of the property in dispute, as against the defendant, and that, if an estoppel exists, it must be based on the conduct of the plaintiff at the time Strohmeyer Bros. made the sale to McGrath. At that time, on the theory of the facts most favorable to the defendant, the hardware stock in Webster City had been disposed of, and McGrath had moved to Nevada. He carried a few bicycles in the latter part of the year 1895, but had none on hand, and none had been ordered, when he disposed of his stock of hardware. The district court, however, may well have found the facts to be less favorable to the defendant than the theory suggested. The date in March on which the stock of hardware was disposed of is not shown. The business subsequently carried on by the plaintiff was that of dealing in bicycles, but there is no evidence in regard to the value of the stock he carried at any time. Miller states that the order for the goods sold to McGrath was received in March, that inquiries in regard to his standing were made at the time the order was received, and that the goods were sold in March, although not delivered until the eleventh of April. There is nothing

in what the member of the firm who testified said, in con- -
flict with that testimony. The evidence makes it uncertain
whether credit was given by the firm to McGrath before or
after he disposed of his stock of hardware. It may have
been before. If made after that time, it may have been
before the bicycles ordered by the plaintiff had been received,
or when those in stock were of small value. In fact, the
evidence justifies the conclusion that the bicycle stock was
never large or of great value. The report of the commercial
agency examined by the firm estimated the financial worth
of McGrath at from eight thousand dollars to ten thousand
dollars; and it is evident that upon that the firm chiefly
relied in giving him credit. There is no evidence that the
plaintiff knew that McGrath was seeking credit, and might
obtain it on the faith of his supposed ownership of the stock
of bicycles, and bad faith on the part of the plaintiff in
any respect is not shown. But conceding, for the purposes
of this case, that actual notice that credit was sought by
McGrath on the faith of his supposed ownership of the
stock was not necessary to an estoppel, and that the plain-
tiff should be charged with notice of the fact that persons
dealing with McGrath might be misled to their prejudice
by his apparent ownership of the stock, it does not follow
that the defendant should succeed in his defense. He knew
before he levied upon the property in controversy that it
did not belong to McGrath, but to the plaintiff. The burden
was on him to show that credit was given to McGrath for
the goods sold him in consequence of his supposed owner-
ship of the bicycle stock carried by the plaintiff, after the
hardware stock was withdrawn, and the district court was
authorized to find that he had failed to prove that essential
fact. That the plaintiff carried on his business in the name
of McGrath after credit had been given to the latter is not
material, for the reason that it did not in any manner
influence the act of Strohmeyer Bros. in making their sale
to McGrath. It follows from what we have said that the

judgment of the district court is supported by the evidence, and .it is AFFIRMED.

GRANGER, J., not sitting.